IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BERNARD F. WOODS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 10-952-SLR |
| | ) | |
| DAVID PIERCE, Warden, | ) | |
| and JOSEPH R. BIDEN, III, | ) | |
| Attorney General of the State | ) | |
| of Delaware, | ) | |
| | ) | |
| Respondents.[1] | ) | |

---

Bernard F. Woods.  Pro se petitioner.

Karen V. Sullivan.  Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

---

**MEMORANDUM OPINION**

September  11 , 2013
Wilmington, Delaware

---

[1] Warden David Pierce assumed office in July 2013, replacing former Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25.

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Bernard F. Woods ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware.  Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1)  For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In July and September 2007, two separate controlled buys of crack cocaine occurred between petitioner and two different confidential informants.  (D.I. 14, State's Ans. Br. in *Woods v. State*, No.567,2009 at 1-6)  The first controlled buy involved confidential informant one, petitioner, and Wayne Campbell, a person who sold drugs with petitioner.  The second controlled buy involved confidential informant two, petitioner, and a woman named Tiffany, another person who sold drugs with petitioner. In September 2007, following the second controlled buy, the New Castle County police obtained search warrants for (1) Wayne Campbell's residence at 111 Schafer Blvd., and (2) petitioner's residence at 201 Werden Drive.  *Id.*

New Castle County Police officers simultaneously executed the warrants on September 12, 2007.  *Id.*  At 201 Werden Drive, the police found Campbell inside his residence with a pit bull.  The pit bull attacked the officers and they subdued the dog with a taser.  During their search of the residence, the officers located a digital scale, colored baggies used for packaging drugs, and documents indicating that Campbell lived at the residence.  *Id.*

When officers executed the search warrant at 111 Schafer Blvd., petitioner was outside the residence on the front yard speaking with a female parked in a car. Officers Grant and Grajewski attempted to detain petitioner, but he would not comply and became combative. The officers tased petitioner several times to no effect. Petitioner punched both of the officers during the struggle and was only subdued after a police K-9 unit was deployed. Once Officer McDermott placed petitioner in his patrol car, McDermott observed petitioner discard a baggie containing a large rock of crack cocaine from his person onto the floorboard of the patrol car. This baggie was recovered and later tested positive for crack cocaine with a weight of 15.3 grams. *Id.*

The officers then searched inside 111 Schafer Blvd, where petitioner resided with two of his relatives. *Id.* They found a small quantity of marijuana, two digital scales, plastic baggies, a pipe, 1.9 grams of crack cocaine, .380 ammunition, thirty-nine rounds of 9 mm ammunition, two ballistic vests, and a .38 revolver. *Id.* at 7. In the upstairs bedroom, which belonged to petitioner's parents, officers located nine handguns and five rifles. *Id.*

During a post-*Miranda* videotaped interview, petitioner admitted that he had been selling crack for two months and that the rock of crack he had discarded in the police car was given to him for an unpaid debt. *Id.* Petitioner also stated that the guns in his parents' room used to belong to him, but that he gave them to his father after petitioner's first felony conviction. Petitioner admitted that he was aware the guns were in the residence, and also stated that he had placed two handguns in the ceiling of the basement, a 9 mm and a .38 caliber. *Id.*

2

Although the officers had discovered the .38 caliber during the search of 111 Schafer Blvd., they had not discovered the 9 mm. Therefore, another search warrant was obtained based on this information and executed on September 13, 2007. The 9 mm in question was located during the search of the basement ceiling and logged into evidence. *Id.*

In February 2008, petitioner pled guilty to one count each of delivery of cocaine, possession of a deadly weapon by a person prohibited, second degree conspiracy, and possession of a firearm during the commission of a felony. *See Woods v. State*, 994 A.2d 745 (Table), 2010 WL 1664008 (Del. Apr. 26, 2010). The Superior Court immediately sentenced him to a total of twenty-nine years of incarceration, suspended after the mandatory minimum fifteen years for a period of probation. Petitioner did not file a direct appeal. *Id.*

In June 2008, petitioner filed a pro se motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, and then filed three amendments thereto. *Id.* In July 2009, a Superior Court Commissioner recommended that petitioner's Rule 61 motion be denied. A Superior Court judge adopted that recommendation in September 2009, and denied the motion. The Delaware Supreme Court affirmed that judgment. *Id.*

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer (D.I. 12), arguing that the all of the claims asserted therein fail to warrant relief under § 2254(d).

3

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and

adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial,"

5

showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011). The Supreme Court recently expanded the purview of the *Richter* presumption in *Johnson v. Williams*, ___ U.S. ___, 2013 WL 610199 (Feb. 20, 2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal

6

habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id.* at *7. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at *3.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

After reviewing petitioner's application, memorandum in support, and traverse, the court interprets petitioner's application as presenting the following five grounds for relief:[2]  (1) defense counsel provided ineffective assistance by coercing him to plead guilty; (2) the prosecutor engaged in misconduct by (a) maliciously using duress to coerce petitioner to plead guilty and to procure fraudulent weapons convictions, (b)

---

[2]The court has combined two of petitioner's repetitive claims (regarding the state court error during his collateral proceeding) into one sole claim, hereinafter referred to as claim four, without changing the substance of the two claims.

knowingly presenting false information to the grand jury, and (c) knowingly presenting false information during the plea process; (3) defense counsel's failure to investigate the fraudulent weapons charges, as well as the prosecutor's knowing presentation of such fraudulent weapons charges, rendered petitioner's plea unknowing and involuntary; (4) the Delaware courts should have reviewed petitioner's claim of prosecutorial misconduct asserted in his Rule 61 motion in the interest of justice, and the failure to consider the claim resulted in a miscarriage of justice; and (5) petitioner is actually innocent of the weapons conviction because the weapons that would have been entered as evidence at trial were illegally seized and fruit of the poisonous tree.

### A. Claim One: Ineffective Assistance of Counsel

In claim one, petitioner contends that defense counsel provided ineffective assistance by: (1) failing to investigate and demonstrate that the weapons evidence was fraudulent and a pretext, and by deliberately misrepresenting the evidence that would be presented at trial in an effort to coerce petitioner to plead guilty; (2) misinforming petitioner that the sentences could later be reduced, and by failing to challenge the sentencing enhancement for being premised on fraudulent weapons evidence; and (3) failing to inform the trial judge that the police officers who investigated petitioner's case lied in order to obtain the indictment against him.

Petitioner presented substantially the same allegations to the Delaware State Courts in his Rule 61 proceeding, and the state courts denied the allegations as meritless. Therefore, habeas relief will only be warranted if the Delaware Supreme Court's denial of claim one was either contrary to, or an unreasonable application of,

8

clearly established federal law, or was based on an unreasonable determination of the facts.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

9

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland/Hill* standard applicable to petitioner's ineffective assistance of counsel claim. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland* or *Hill*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard to the facts of petitioner's case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens.[3] *Richter*, 131 S.Ct. at 788. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is

---

[3] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 131 S.Ct. at 788 (internal citations omitted).

precluded "so long as fairminded jurists could disagree on the correctness of the state

court's decision." *Id.* at 786.

Here, the Delaware Supreme Court denied petitioner's ineffective assistance

allegations as either factually incorrect or contradicted by the record, explaining that,

> [d]uring the course of the plea colloquy, [petitioner] expressed satisfaction with
> the representation provided by his counsel.  He also acknowledged that he was
> pleading guilty because he, in fact, was guilty.  He acknowledged his
> understanding that he was waiving certain rights by pleading guilty, including his
> right to pursue the pretrial suppression motion.  The Superior Court specifically
> found that [petitioner] was competent to enter a plea and that his plea was
> entered knowingly, intelligently, and voluntarily.  The trial court reviewed the
> sentence with [petitioner], and [petitioner] acknowledged it was the sentence he
> agreed to in his plea form.  [Petitioner] also stated under oath that no one had
> coerced him into entering a plea.

*Woods*, 2010 WL 1664008, at *2. The Delaware Supreme Court then held that

petitioner was bound by these sworn plea colloquy assertions because he failed to rebut

the verity of the statements with clear and convincing evidence to the contrary. *Woods*,

2010 WL 1664008, at *2.  Relying on this conclusion, the Delaware Supreme denied

claim one for failing to satisfy either prong of the *Strickland/Hill* test.

It is well-settled that "[s]olemn declarations in open court carry a strong

presumption of verity" that create a "formidable barrier in any subsequent collateral

proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Notably, in this

proceeding, petitioner's unsupported allegations fail to provide compelling evidence as

to why the statements he made during the plea colloquy should not be presumptively

accepted as true.  As a result, the court concludes that the Delaware State Courts

reasonably applied *Blackledge* in holding that petitioner was bound by the

representations he made during the plea colloquy.  Given this conclusion, the court

determines that counsel did not perform deficiently, because the statements petitioner made during his plea colloquy belie his present allegations that he was coerced into pleading guilty, that he was dissatisfied with counsel's representation, or that counsel provided ineffective assistance by failing to inform the trial court that the weapons evidence was fraudulent.

In addition, counsel's Rule 61 affidavit statements describing the communications and advice he provided petitioner during the plea process support the court's conclusion that counsel did not perform deficiently during the plea process.  For instance, counsel describes how he met with petitioner and petitioner's family, and explains that they discussed the "overwhelming" evidence of petitioner's guilt that the State intended to produce at trial. (D.I. 14, Appellant's App. in Op. Br. in *Woods v. State*, No. 567,2009, at A9)  This evidence consisted of the police officers' testimony, as well as petitioner's "inculpatory statement [to the police] that was captured on video." *Id.*  After discussing the importance of petitioner's videotaped police interview, counsel told petitioner and his family that the State intended to prosecute petitioner as an habitual offender if he decided to proceed to trial, and described how being sentenced as an habitual offender was likely to result in a life sentence. *Id.*  Counsel then explained that the State was willing to recommend a sentence of no more than the mandatory minimum fifteen years of incarceration and refrain from seeking habitual offender sentencing if petitioner agreed to plead guilty to one count each of trafficking, delivery of cocaine, possession of a deadly weapon during the commission of a felony, possession of a deadly weapon by a person prohibited, and second degree conspiracy.  Counsel further explained that the State would dismiss the remaining charges if petitioner agreed to the terms of the guilty

12

plea. (D.I. 14, State's Ans. Br. in *Woods v. State*, No. 567,2009, at 10) Given all of this information and counsel's assessment of the likelihood of success at trial, petitioner agreed to take the plea. *Id.*

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. In his Rule 61 affidavit, defense counsel states that he saw no basis on which to challenge petitioner's post-*Miranda* videotaped inculpatory police statement, and that the videotaped statement was more than enough to support the police officers' testimony regarding the weapons evidence. Notably, petitioner does not challenge the voluntariness of his police statement, and he has not provided any support for his conclusory and self-serving allegation that the police officers and/or prosecutor lied about the weapons evidence. In addition, defense counsel filed a suppression motion challenging the searches and seizure of evidence, along with a motion to identify the confidential informant. Given these actions on counsel's part, as well as the strength of petitioner's videotaped police interview and the police officers' testimony, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* and *Hill* in finding that defense counsel did not perform deficiently.

In turn, given the clear benefit petitioner derived by pleading guilty, the court concludes that the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard in holding that petitioner failed to demonstrate the prejudice necessary to establish a successful ineffective assistance of counsel claim. Significantly, petitioner

13

does not explicitly or implicitly assert that he would have proceeded to trial and have accepted the risk of life imprisonment rather than enter a plea agreement that recommended the minimum mandatory fifteen year sentence.

And finally, given the absence of any evidence suggesting that the police and/or the State fabricated the weapons evidence, the court cannot conclude that the Delaware Supreme Court's decision constituted an unreasonable determination of the facts.

Thus, viewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review, while simultaneously keeping in mind petitioner's plea colloquy statements, the overwhelming evidence against petitioner, petitioner's unsupported allegations, and the substantial benefit petitioner derived by pleading guilty, the court concludes that the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard in denying the arguments in claim one. Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

### B. Claims Two and Three: Prosecutorial Misconduct/Involuntary Plea

Petitioner's second and third claims stem from his contention that the police officers lied about the weapons evidence in both the affidavits of probable cause used to secure search warrants of his home and while testifying before the grand jury that ultimately chose to indict him. Petitioner contends that the prosecutor maliciously prosecuted him on the basis of this fraudulent weapon evidence, and argues that this alleged prosecutorial misconduct rendered his plea involuntary.

Petitioner presented these arguments to the Superior Court in a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61, and the Superior

14

Court denied them as barred under Rule 61 because petitioner had already presented the arguments in an earlier motion for reduction of sentence. *See State v. Woods*, ID 00708031045, Rep. & Rec. at 6 (Del. Super. Ct. July 31, 2009). The Delaware Supreme Court affirmed that decision, specifically holding that the claims were formerly adjudicated under Rule 61(i)(4). *Woods*, 2010 WL 1664008, at *1.

By explicitly denying claim one as barred by Rule 61(i)(4), the Delaware Supreme Court articulated a plain statement under *Harris v. Reed* that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural ground precluding federal habeas review. Thus, the court can only review claims two and three if petitioner demonstrates cause and prejudice, or that a miscarriage of justice will occur absent such review. Petitioner does not explicitly assert cause for his procedural default of claims two and three. Moreover, even if the court were to construe petitioner's convoluted statements in his numerous filings as an attempt to establish cause by blaming defense counsel for failing to present claims two and three on direct appeal, the argument is unavailing. In his Rule 61 proceeding, petitioner explicitly alleged that counsel provided ineffective assistance during the plea process by failing to investigate the alleged fraudulent weapons evidence and by coercing petitioner to enter a guilty plea by mentioning the likelihood of a longer sentence if convicted by a jury. However, petitioner's Rule 61 motion and post-conviction appeal did not allege that counsel was ineffective for failing to raise the issue of the fraudulent weapons evidence and/or prosecutorial misconduct on direct appeal. As a result, the issue of counsel's failure to raise the involuntary

plea/prosecutorial misconduct argument on appeal is itself procedurally defaulted, [4] and cannot excuse petitioner's procedural default of the substantive involuntary plea/prosecutorial misconduct claims. *See Edwards*, 529 U.S. at 453-54.

However, even if the court did not treat this particular ineffective assistance of counsel claim as being procedurally defaulted,[5] counsel's performance could only constitute cause for petitioner's procedural default of claims two and three if counsel's failure to raise the two claims on direct appeal amounted to constitutionally ineffective assistance of counsel. Such is not the case here. During his plea colloquy, petitioner admitted that he was giving up the right to appeal his case on any matter other than a sentence exceeding the maximum penalties allowed under the law. *See Woods*, ID 0708031045, Rep. & Rec. at 7 (Del. Super. Ct. July 31, 2009). Claims two and three do not assert that petitioner's sentence exceeded the maximum penalties under the law. Consequently, counsel did not perform ineffectively by failing to raise issues on direct appeal that were precluded by the terms of petitioner's voluntary and knowing plea agreement.

---

[4]*See* Del. Super. Ct. Crim. Rule 61(i)(2).

[5]The court notes that petitioner did not raise the issue of counsel's alleged failure to raise claims two and three on direct appeal as an independent ground for relief in the instant federal habeas application. Thus, it would appear that the limited exception to the procedural default doctrine articulated in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) mentioned later in this opinion cannot excuse petitioner's procedural default of this ineffective assistance of counsel claim that is not raised as an independent ground for relief but, rather, as a potential excuse for the procedural default of two other grounds for relief. However, given the unique "layered" procedural default situation presented here, and the uncertainty surrounding the extent of the *Martinez* rule, the court will exercise prudence and alternatively review the merits of the ineffective assistance of counsel claim.

In the absence of cause, the court need not address the issue of prejudice.
Nevertheless, petitioner cannot demonstrate that he was prejudiced by the procedural
default of claims two and three. As previously discussed, the court has concluded that
petitioner's plea was knowing, intelligent, and voluntary. By accepting the plea,
petitioner waived his rights to assert the issues of prosecutorial misconduct, fraudulent
evidence, and fraudulent testimony. *See Washington v. Sobina*, 475 F.3d 162 (3d Cir.
2007)(a defendant's unconditional, knowing, and voluntary guilty plea acts as a waiver
of non-jurisdictional defects, including the waiver of pre-trial claims that police illegally
seized evidence). Given petitioner's waiver of these issues, the court cannot find that
he was prejudiced by the failure to argue the merits of these claims on direct appeal.

And finally, the court is not persuaded that petitioner's allegation of actual
innocence warrants review of these claims in order to avoid the miscarriage of justice.
Gateway claims of actual innocence will permit a habeas court to review the merits of
procedurally barred claims only if the petitioner proves his claim of actual innocence
with new reliable evidence that was not presented at trial. *House v. Bell*, 547 U.S. 518,
537 (2006); *Hubbard*, 378 F.3d at 340. Here, because petitioner provides the same
affidavits of probable cause that were available during the plea process to "support" his
allegations of "pretextual" charges, perjured police testimony, and fraud on part of the
State, he has failed to provide any new reliable evidence to suggest that he is actually
innocent of the crimes he voluntarily admitted committing or that he was, in any way,
coerced into pleading guilty. Significantly, for the reasons discussed earlier in this
opinion, petitioner is bound by the statements he made during his plea colloquy

17

admitting his guilt and waiving his rights. Accordingly, the court will deny claims two and three as procedurally barred.

## C. Claim Four: State Court Error in Collateral Proceeding

In claim four, petitioner contends that the Superior Court erred and committed a miscarriage of justice by denying his prosecutorial misconduct claim as procedurally barred and for refusing to review it under Rule 61's "interest of justice" exception to the procedural default doctrine. Although not entirely clear, petitioner appears to assert that the state courts erred in not conducting an evidentiary hearing which would have given him an opportunity to present evidence of the fraudulent information concerning the weapons charges, namely, the allegedly perjured affidavits of probable cause used to obtain the two search warrants. (D.I. 17 at 13) This claim, however, is not cognizable on federal habeas review, because it is premised on errors that occurred during petitioner's state collateral proceeding rather than the proceeding leading to his judgment of conviction. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)(holding that the "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding")(emphasis in original); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). Accordingly, the court will deny claim four for failing to assert a proper basis for federal relief.[6]

---

[6]Moreover, even if the court were to construe claim four as asserting an argument that petitioner's plea was rendered involuntary because the prosecutor engaged in

### D. Claim Five: Actual Innocence

In his fifth claim, petitioner contends that he is "actually innocent" of the weapons offenses to which he pled guilty. (D.I. 52) This claim is unavailing. The United States Supreme Court has not yet resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013). Rather, a claim of actual innocence, if proven by new reliable evidence, permits a court to review the merits of an otherwise defaulted claim; in other words, an actual innocence claim is a gateway for excusing procedurally defaulted claims. *See House,* 547 U.S. at 537. Thus, to the extent petitioner is asserting his actual innocence argument in its own right, and not as a gateway claim to excuse a procedural default (as previously discussed in section IV(B) of this opinion), the court denies it for failing to assert an issue cognizable on federal habeas review.

### E. Motions

During the pendency of this proceeding, petitioner filed the following motions: (1) three motions seeking representation by counsel (D.I. 33;  D.I. 51;  D.I. 55);  (2) a motion for an evidentiary hearing (D.I. 34);  (3) a motion to set aside state court finding of facts (D.I. 36);  (4) a motion to amend habeas application (D.I. 41);  (5) a motion to dismiss for lack of jurisdiction (D.I. 48); and (6) a motion to dismiss on grounds of actual innocence (D.I. 52).

---

misconduct by relying on the police officers' perjured affidavits of probable cause for the search warrant, the argument is substantially similar, if not identical to, the arguments asserted in claims two and three. Thus, to the extent claim four raises a slightly varied involuntary plea/prosecutorial misconduct argument, the court would deny it as procedurally barred from habeas review for the same reasons set forth in section IV (B) of this opinion.

19

### 1. Motion to amend

Petitioner's motion to amend merely supplements and amplifies the claims asserted in his application (D.I. 41). Therefore, the court will grant the motion to the extent it supplements the instant application, and notes that it considered the supplemental information during its review of the instant application.

### 2. Motions for representation by counsel

Petitioner filed three motions requesting representation by counsel in this proceeding. (D.I. 33; D.I. 51; D.I. 55) It is well-settled that a petitioner does not have an automatic constitutional or statutory right to representation in a federal habeas proceeding. *See Coleman*, 501 U.S. at 752; *United States v. Roberson*, 194 F.3d 408, 415 n.5 (3d Cir. 1999). Rather, a court may seek representation by counsel for a petitioner who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [petitioner] resulting . . . from [petitioner's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *See Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993); 18 U.S.C. § 3006A (a)(2)(B)(representation by counsel may be provided when a court determines that the "interests of justice so require"). Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent petitioner include: (1) the merits of the petitioner's claim; (2) the petitioner's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the petitioner's ability to pursue such investigation; (5) the petitioner's capacity to retain counsel on his or her own behalf; and

20

(6) the degree to which the case turns on credibility determinations or expert testimony. *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

For the most part, petitioner's motions request representation by counsel because he is unskilled in the law and because he believes the complexity of the factual and legal issues presented in this case are beyond his ability to pursue an effective investigation. Petitioner also asserts that counsel will be able to make better use of available discovery methods and will be better able to prove that the illegal weapons convictions and sentences were the "result of [a] deliberately fraud[ulent] false statement." (D.I. 55 at 2)

However, petitioner also states that the Superior Court should have provided representation during his Rule 61 proceeding and that the lack of representation during his collateral proceeding prevented him from presenting a claim of ineffective assistance of counsel. Petitioner then appears to contend that the lack of representation in his state collateral proceeding warrants representation in this proceeding so that he can better assert his grounds for relief. *Id.* at 1.

Recognizing its duty to liberally construe pro se filings, the court construes petitioner's last argument to be that he is entitled to representation by counsel in this proceeding under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). This liberal construction, however, does not lead to the relief requested. Significantly, *Martinez* did not recognize or create an automatic constitutional right to counsel in collateral proceedings. *See Martinez*, 132 S.Ct. at 1319. Rather, *Martinez* held for the first time that the ineffective assistance of counsel during initial collateral review proceedings, or the failure to appoint counsel during initial collateral review proceedings, may establish cause in a

21

federal habeas proceeding sufficient to excuse a petitioner's **procedural default** of a substantial claim of ineffective assistance of trial counsel when, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding rather than on direct appeal. *Id.* at 1321 (emphasis added). Thus, even after *Martinez*, a federal habeas court presented with a motion requesting representation by counsel must still determine if the petitioner has demonstrated special circumstances such that the interests of justice require representation.

Here, after viewing petitioner's reasons in conjunction with petitioner's other filings in this case, the court concludes that the interests of justice do not require representation by counsel. Petitioner's filings demonstrate his ability to articulate his claims and represent himself. The case is fairly straightforward and capable of resolution on the record, and expert testimony is not necessary. Thus, the court will deny petitioner's motions for representation.

### 3. Remaining motions

As for the remaining motions, the court has already concluded that the claims raised in petitioner's application fail to warrant habeas relief. Accordingly, the motions will be denied as moot. (D.I. 34; D.I. 36; D.I. 41; D.I. 48; D.I. 52)

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that

22

reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.